FILED

2016 Aug-26  AM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

DAMIAN A. BLAIR,                    )
                                    )
      Plaintiff,              )
                                    )
v.                                  )    Case No.  5:15-cv-02167-KOB-TMP
                                    )
SHERIFF MATT GENTRY, et al.,        )
                                    )
      Defendants.             )

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* amended complaint and supplemental complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States.  (Docs. 33 & 36).  The plaintiff names the following defendants in the amended complaint: Cullman County Sheriff Matt Gentry; Warden Floyd Lee; Lieutenant Jason Allen; Lieutenant Susan Black; Deputy Hammick[1]; Deputy Ross; Cullman County District Attorney C. Wilson Blaylock[2]; Assistant District Attorney Jeff Roberts; and Assistant District Attorney John Bryant.[3]  (Doc. 33 at 1, 3). [4]  The plaintiff seeks monetary, declaratory, and injunctive relief.  (*Id.* at 24).  In accordance with the usual practices of this court

---

[1]   Incorrectly identified as Ms. Hammic in the plaintiff's amended complaint.  (Doc. 33 at 1).

[2]   Incorrectly identified as Wilson Baylock in the plaintiff's amended complaint.  (Doc. 33 at 1).

[3]   Incorrectly identified as John Briant in the plaintiff's amended complaint.  (Doc. 33 at 1).

[4]   Citations are to the CM/ECF document and page numbers.

and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Standard of Review

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees.  The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which does not state a claim upon which relief can be granted.  *Id.*  Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist.  *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted.  A review on this ground is governed by the same standards as dismissals for failure

to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).  However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II.  Procedural History

On November 25, 2015, the plaintiff initiated this action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Thereafter, the plaintiff filed several motions to amend the complaint in which he sought to name additional defendants and allege additional facts.  (Docs. 3, 7, 10, 14, 23).  On February 24, 2016, the undersigned directed the plaintiff to file a final amended complaint to include all of his claims in this action.   (Doc. 31 at 2).   The undersigned specifically advised the plaintiff that his final amended complaint should not refer back to the original complaint and that the court would consider only the claims set forth in the final amended complaint.  (*Id*.).

On March 1, 2016, the plaintiff filed a final amended complaint.  (Doc. 33).  However, the plaintiff wrote, "I would like to request that the court keep (Docs 1 and 2) of my original complaint.  The Court can overlook (Docs 3 through 23) or what ever [sic] the Court deems void."  (Doc. 33 at 3).  Because the undersigned expressly notified the plaintiff that the court would only consider the claims in his final amended complaint, the plaintiff's request that the court refer to portions of his original complaint is **DENIED**.  The court will only consider the plaintiff's final amended complaint, (doc. 33), and the plaintiff's supplemental complaint, (doc. 36), to the extent the plaintiff alleges that he was found not guilty on

March 8, 2016, of violating the registration provision of the Alabama Sex Offender

Registration and Community Notification Act.  (Docs. 36, 37).

### III. Factual Allegations

The Alabama Community Notification Act ("ACNA") was enacted in 1996.

The ACNA governed registration and community notification of sex offenders in

the State of Alabama until it was replaced in 2011.

On December 18, 2003, the plaintiff pleaded *nolo contendere* to molesting a

two year old female in Georgia.[5]   (Doc. 33 at 7).   In 2006, the plaintiff

"transferred" his probation from Hall County, Georgia, to Cullman County,

Alabama.  (Doc. 33 at 6-7).  As a sex offender, the plaintiff was required to register

under ACNA once a year, for the rest of his life.  (*Id*. at 7).  The plaintiff was under

no obligation to pay a fee when he registered.  (*Id*.).

Shortly after the plaintiff returned home to Cullman County, he met a

woman, whom the undersigned will refer to as "V" to protect her privacy.  (Doc.

33 at 11).  At the time the plaintiff met "V," she was pregnant.  (*Id*.).  After "V"

gave birth to her son, she and the plaintiff began dating and she became pregnant

with the plaintiff's daughter.  (*Id*.).  The plaintiff and "V" decided to marry and she

---

[5]   Alabama Law Enforcement Agency Community Information Center, https://app.alea.gov/Community/wfSexOffenderFlyer.aspx?ID=938c7ee3-3010-48f6-8803-e1967d15afd6 .

and her son moved in with the plaintiff.  (*Id*.).  The plaintiff claims, "We had a very stronge [sic] relationship complete with a 3 house chicken farm . . . ."  (*Id*.).

The Cullman County Sheriff's Office conducted a check at the plaintiff's home to verify his address and found "V" and her son living there.  (Doc. 33 at 11).  Days later, sheriff's deputies returned with a warrant for the plaintiff's arrest for violating the ACNA by residing with a minor, presumably "V's" son.  (*Id*. at 11-12).

On November 8, 2007, the plaintiff's probation in Blount County was revoked and he was sentenced to two years in prison.  (Doc. 33 at 12).  The plaintiff states that the Cullman County District Attorney's Office offered him a 25 year prison sentence on his ACNA violation for residing with a minor.  (*Id*.).  The plaintiff decided to proceed to trial.  (*Id*.).  The plaintiff's attorney argued that Assistant District Attorney John Bryant would not be able to "prove conduct" or enhance the plaintiff's sentence based on his former *nolo contendere* plea.  (*Id*.).  As a result, Bryant offered the plaintiff a ten year sentence with good time.  (*Id*.).  The plaintiff states, "Briant [sic] threatened that if I took it to jury trial and lost he would in fact give me the 25 years."  (*Id*.).  The plaintiff claims District Attorney C. Wilson Blaylock and Assistant District Attorneys Bryant and Jeff Roberts informed "V" that if she remained with the plaintiff, and if they married, she would

never "get her kids back."[6]  (Doc. 33 at 14).  The plaintiff accepted the state's offer of ten  years.  (Doc. 33 at 12).

The plaintiff argues that ACNA was unconstitutional and "overbearing." (Doc. 33 at 13).  He contends the Act cost him his wife, children, and chicken farm.  (*Id.*).  He claims that he was not seen his daughter, who is now 8 years old. (*Id.*).  He further claims "Cullman County" prohibited him from being around his step-son or having visitation with his daughter.  (*Id.*).

On July 1, 2011, the ACNA was repealed by the Alabama Sex Offender Registration and Community Notification Act, Alabama Act No. 2011-640, § 49, Ala. Code § 15-20A-1, *et seq*., ("ASORNCA").  ASORCNA now governs the legal registration and community notification requirements applicable to adult sex offenders as defined in § 15-20A-4(1) and is "applicable to every adult sex offender convicted of a sex offense as defined in Section 15-20A-5, without regard to when his or her crime or crimes were committed or his or her duty to register arose."  Ala. Code § 15-20A-3(a).

The plaintiff was released from prison on February 8, 2012, and is now subject to the provisions of ASORNCA due to his prior conviction from Georgia. (Doc. 33 at 13).  The plaintiff is required to register four times a year for life and

---

[6]    Although the plaintiff at times refers to "V" as his wife, it is not clear from the plaintiff's amended complaint whether they were actually married or view themselves as having a common-law marriage.

pay a $10.00 fee each time.   (Doc. 33 at 7).   The plaintiff claims these requirements are unconstitutional and "overbearing." (*Id.*).   He further argues that under Georgia law (the state in which is sex-offender conviction occurred), he was only required to register for ten years and, therefore, he should not have to register in Alabama since ten years have expired.   (*Id.*).

The plaintiff claims that after his release in February 2012, the victim in his prior criminal case in Georgia contacted him on Facebook and informed him that she did not want to testify against him, but "'the adults'" forced her to "'say that stuff about [the plaintiff].'"   (Doc. 33 at 15).   The plaintiff contends he has served time for a "sex crime" he did not commit.   (*Id.*).   The plaintiff further claims that he is in the process of filing an "appeal on the Federal level in Georgia" and plans to request a pardon from the governor of Georgia.   (*Id.*).

On February 9, 2014, the plaintiff was arrested for unlawful possession of a controlled substance and two other charges.   (Doc. 33 at 16).   The plaintiff stayed in the Cullman County Jail for four months without a court hearing, including not receiving a 72-hour hearing.   (*Id.*).   The plaintiff claims he has been in jail "4 other times on this same [unlawful possession] charge" and did not receive a 72-hour hearing.   (*Id.*).

The plaintiff is required to comply with ASORCNA four-times-per-year reporting requirements in October, January, April and July of each year. (Doc. 33

at 9). In June 2015, a "road cop" came to the plaintiff's home to verify his address. (*Id.*). The plaintiff claims an error in "paper work" on the part of Judge Kim Chaney's office and the plaintiff's criminal defense attorney resulted in him failing to appear in court. (*Id.*). The officer arrested the plaintiff and booked him into the Cullman County Jail. (*Id.*). Judge Chaney and the plaintiff's attorney discovered the error and the plaintiff was released four days later on a recognizance bond. (*Id.*).

About a week later, Lieutenant Susan Black called the plaintiff asking why he did not come to the jail to register since he stayed in jail for four days. (Doc. 33 at 10). The plaintiff returned to the jail in late June to register. (*Id.*). Lieutenant Black then set a date for the plaintiff to register again on July 20, 2015. (*Id.*). The plaintiff claims he thought he "was good" because he had already registered three times in 2015. (*Id*). A warrant was issued for the plaintiff's arrest for failing to register for the month of July and he was arrested in September 2015. (*Id.*). He remained in jail for 15 hours before making bond. (*Id.*). The plaintiff claims he was not provided a 72-hour hearing after his arrest.[7] (Doc. 33 at 16). He further claims that by the time he obtained an attorney, Assistant District Attorney Jeff

---

[7]   The plaintiff states, "I've been in jail in Hall County Georgia and Blount County Alabama and both of them give 72 hour hearings on every [single] thing if your [sic] not able to bond or have no bond to explain things to you." (Doc. 33 at 17). By the plaintiff's own admission, he was out of jail in 15 hours.

Roberts "had [him] pushed through District Court and [indicted] by a grand jury" before he could have a preliminary hearing.  (*Id*.).

On October 5, 2015, the plaintiff appeared before Judge Chaney regarding his ASORCNA violation for failing to register in July 2015.  (Doc. 33 at 10).  The plaintiff was arrested in the courtroom on a warrant issued on September 25, 2015, for a second ASORCNA violation.  (*Id*. at 10, 11).  Specifically, Lieutenant Jason Allen and Deputy Hammick claimed the plaintiff failed to register within 24 hours after his release from jail in September 2015.  (*Id*.).  The plaintiff claims Allen and Hammick "manipulated the law" in order to revoke his bond and hold him in jail. (*Id*. at 9, 10, 11).

The plaintiff maintains he can be away from home for three days or 72 hours before he has to notify Lieutenant Allen and re-register.  (Doc. 33 at 8).    The plaintiff claims he was in jail only fifteen hours before making bond after his arrest in September 2015 and was not away from home for three days.  (*Id*.).  The plaintiff contends that he was arrested in 2014 and was in jail almost twenty-four hours before he posted bond.  (*Id*.).  The plaintiff claims Lieutenant Black informed him that he did not need to register because he had not been away from his residence for more than three days.  (*Id*.).

The court may take judicial notice of the plaintiff's state court criminal records.[8]  *See Grider v. Cook*, 522 F. App'x 544, 545 n.2 (11th Cir. 2013) ("the district court was permitted to take judicial notice of Grider's state court criminal proceedings"); *see also Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (taking judicial notice of DeKalb County Superior Court Online Judicial System pursuant to Fed. R. Evid. 201).

On March 8, 2016, the plaintiff was found not guilty of violating ASORCNA for failing to register in July 2015.[9]  (Doc. 36 at 1-2). On July 12, 2016, the plaintiff' second ASORCNA charge for failing to register after his release from jail in September 2015 was dismissed after the plaintiff entered into a plea agreement under which he pleaded guilty to unlawful possession of a controlled substance.[10] The plaintiff was sentenced to 54 months.

The plaintiff acknowledges that he received a 72-hour hearing after his arrest on October 5, 2015, for the second ASORCNA violation, but claims it was an "improper hearing" because it was conducted over Deputy Ross's cell phone. (Doc. 33 at 16).  He states there is a "video court room" in the Cullman County Jail that is not in use.  (*Id.*).

---

[8]   The plaintiff's state court criminal records can be found at www.alacourt.com.

[9]   *See State of Alabama v. Damian Alan Blair*, CC-2015-000551.00.

[10]   *See State of Alabama v. Blair*, CC-2016-286W; *see also State of Alabama v. Damian Alan Blair*, CC-2016-000051.00.

The plaintiff also claims ASORCNA is unconstitutional because it prevents him from working as a commercial driver since he has "to be home every night" and cannot leave the State of Alabama.   (Doc. 33 at 14-15).   The plaintiff complains that he is prohibited from participating in work release programs in Alabama due to his criminal history.   (Doc. 33 at 19).   He states that he participated in work release for six months while he served a sentence for probation violation in Hall County, Georgia.  (Id.).

The plaintiff further complains about the conditions in the Cullman County Jail, where he has been confined since October 2015.  (Doc. 33 at 20-21).   For thirty-six days, he was confined in C Block, where inmates are locked in their cells for twenty-three hours a day.  (Id.).   He was in cell C111 for twenty-six days with two other inmates and forced to sleep on the floor.  (Id. at 21).   There was black mold in the cell.  (Id.).   He was later moved to cell C113 and confined with three other inmates.   (Id.).   The "cold water button" did not work in C113 and the plaintiff had to drink lukewarm water.  (Id.).   Black mold was also present under the bunk.  (Id.).

The plaintiff states that the top shower in C Block is "nasty."  (Doc. 33 at 21).  The plaintiff must wade through standing water to go up and down the steps.  (Id.).   Water runs out of the shower and collects around the telephone on the wall and in front of cell C111.  (Id.).   The bottom shower does not work.  (Id.).

On November 23, 2015, the plaintiff was moved to A Block and assigned cell A211, where he has remained.  (Doc. 33 at 21).   He claims there are three people in almost every cell in A Block.  (Doc. 33 at 24).   He further alleges officers cannot open his cell's lock with the key.  (*Id*. at 21).  The plaintiff claims he has observed at least seven different officers try and fail to open the cell with the key.  (*Id*.).  Instead, officers must call "Main Control[ ]" to have the door rolled open.  (*Id*. at 22).  About three weeks prior to filing the amended complaint, the plaintiff and his cellmates were placed in A211 during a tornado warning.  (*Id*. at 21-22).  He claims that if the power to the jail failed and there was an emergency, officers would not have been able to rescue him.  (*Id*. at 22).   The plaintiff states other cells, including A224, will not open with the key.[11]  (*Id*.).

The plaintiff claims there are several "electrical junction boxes" in A Block that are missing covers and wires are hanging out.  (Doc. 33 at 22).  He alleges one box by the air and heating units is covered with masking tape.  (*Id*.).  He states there are paper airplanes stuck in the ceiling that pose a fire hazard.  (*Id*.).

The plaintiff alleges the sprinkler head in cell A122 is broken and an inmate worker installed the wrong sprinkler head.  (Doc. 33 at 22).  He states several sprinkler heads are rusted throughout the jail and should be replaced.  (*Id*.).

---

[11]   On March 28, 2016, the plaintiff notified the court that the safety lock on cell A211, where he is housed, was repaired.  (Doc. 36 at 4).

The plaintiff complains that the law library costs ten cents a minute to use and if an inmate puts $20.00 on his "books," the kiosk charges $4.45.  (Doc. 33 at 22).  As a result, an inmate can only get $16.55 worth of time in the law library.  (*Id*.).

The plaintiff acknowledges that the food in the jail is "good," but alleges jail officials do not give inmates enough food and they are still hungry.  (Doc. 33 at 23).  The plaintiff also complains that, occasionally, mail is passed out only once a week.  (*Id*.).

The plaintiff claims he has submitted grievances about the foregoing conditions, but Lieutenant Black and Officer Hammick always have "a smart answer to send back."  (Doc. 33 at 23).

At the time of the plaintiff's arrest on February 9, 2014, Mike Rainy was Sheriff of Cullman County and the plaintiff was allowed to work as a trustee in the Cullman County Jail.  (Doc. 33 at 18).  When the plaintiff returned to jail in November 2014, he was again made a trustee in December 2014.  (*Id*.).  The plaintiff alleges when Matt Gentry became Sheriff, he refused to allow the plaintiff to work as a jail trustee because of his criminal history as a sex offender.  (*Id*.).  The plaintiff claims he is being discriminated against because of his "sex offender [status]."  (*Id*. at 19).  He states that he submitted a request to Deputy Hammick to

14

become a trustee, but she responded that Sheriff Gentry does not allow sex offenders to be trustees.  (*Id*.).

For relief, the plaintiff seeks one billion dollars for himself and one billion dollars for his daughter.  (Doc. 33 at 24).  The plaintiff states that since the State of Alabama has cost him his "marriage, family[,] chicken farm  . . . almost all [his] cows and [his] means to support [himself]," the State should also give him a job driving "a Big Green Tractor with a Batwing Bushhog [sic], for the State of Alabama Road Department . . . ."  (*Id*.).

## IV. Analysis

### A. Plaintiff's Prior Conviction & Current Imprisonment

#### 1. *Plaintiff's 2008 Conviction*

In or about 2008, the plaintiff was sentenced to ten years for violating the Alabama Community Notification Act ("ACNA"), after he was found residing with a minor.  (Doc. 33 at 12).  On July 1, 2011, while the plaintiff was still serving his sentence, the ACNA was repealed by the Alabama Sex Offender Registration and Community Notification Act ("ASORCNA").  The plaintiff was released from prison on February 8, 2012.  (*Id*. at 13).

To the extent the plaintiff challenges his 2008 conviction under the ACNA as unconstitutional, his claims are due to be dismissed.  To recover monetary damages for an allegedly unconstitutional conviction or imprisonment, or for other

15

harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A claim for relief bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Id*. at 487. Although *Heck* involved a claim brought under 42 U.S.C. § 1983 for monetary relief, its holding has also been extended to claims seeking both declaratory and injunctive relief. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Abella v. Rubino*, 63 F.3d 1063, 1066 (11th Cir. 1995).

The plaintiff does not allege his 2008 conviction has been invalidated or otherwise set aside. As such, the plaintiff's requests for monetary, declaratory, or injunctive relief based on his 2008 conviction are due to be dismissed without prejudice.

### 2. *Plaintiff's False Arrest Claims for 2015 ASORCNA Violations*

The plaintiff claims he was arrested in June 2015 for failing to appear in court due to an error in "paper work" between the state court and his attorney. (Doc. 33 at 9). The plaintiff was released four days later on a recognizance bond. (*Id*.). About a week later, Lieutenant Susan Black called the plaintiff asking why

16

he did not come to the jail to register since he stayed in jail for four days.  (Doc. 33 at 10).  The plaintiff returned to the jail in late June to register.  (*Id*.).  Lieutenant Black then set a date for the plaintiff to register again on July 20, 2015.  (*Id*.).  The plaintiff claims he thought he "was good" because he had already registered three times in 2015.  (*Id*)  A warrant was issued for the plaintiff's arrest for failing to register for the month of July and he was arrested in September 2015.  (*Id*.).  He remained in jail for 15 hours before making bond.  (*Id*.).

On October 5, 2015, the plaintiff appeared before Judge Kim Chaney regarding the ASORCNA violation for failing to register in July 2015.  (Doc. 33 at 10).  He was arrested in the courtroom on a warrant for a second violation.  (*Id*. at 10, 11).  Specifically, Lieutenant Jason Allen and Deputy Hammick claimed the plaintiff failed to register 24 hours after his release from jail in September 2015. (*Id*.).  The plaintiff claims Allen and Hammick "manipulated the law" in order to revoke his bond and hold him in jail.  (*Id*. at 9, 10, 11).

On March 8, 2016, the plaintiff was found not guilty of violating ASORCNA for failing to register in July 2015.  (Doc. 36 at 1-2).  Additionally, the plaintiff entered into a plea agreement by which he pleaded guilty to unlawful possession of a controlled substance and received 54 months in prison.[12]   In

---

[12]    *See State of Alabama v. Blair*, CC-2016-286W; *see also State of Alabama v. Damian Alan Blair*, CC-2016-000051.00.

exchange, his second ASORCNA violation for failing to register after his release from jail in September 2015 was dismissed.

To the extent the plaintiff argues defendants Black, Allen, and Hammick's actions caused him to be falsely arrested and imprisoned in September and October 2015 in violation of the Fourth Amendment, his claims are due to be dismissed. Because the plaintiff was arrested pursuant to a warrant in both instances, his claims are properly ones for malicious prosecution under the Fourth Amendment, rather than for false arrest and imprisonment.  In *Heck v. Humphrey*, the United States Supreme Court distinguished false arrest from malicious prosecution, stating, "unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process."  512 U.S. 477, 484 (1994); *see Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996) ("Here, Whiting says that Defendants applied for and obtained an arrest warrant and – based on the warrant – caused him to be unreasonably 'seized' in 1988.  He says also he was unlawfully arrested in February 1989.  Obtaining an arrest warrant is one of the initial steps of a criminal prosecution.  Under these circumstances (that is, where seizures are pursuant to legal process), we agree with those circuits that say the common law tort most closely analogous to this situation is that of malicious prosecution." (some quotation marks omitted)); *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) ("The issuance of a warrant – even an

invalid one as Carter alleges was issued here – constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest.); *Grider v. City of Auburn, Ala*., 618 F.3d 1240, 1256 (11th Cir. 2010) ("This Circuit 'has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort under § 1983.'") (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)). Therefore, the undersigned will address the plaintiff's claims against defendants Black, Allen, and Hammick as claims for malicious prosecution, and not for false arrest and imprisonment.

"To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Grider*, 618 F.3d at 1256 (emphasis in original). Concerning the first prong, "the constituent elements of the common law tort of malicious prosecution are: (1) criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id*. (internal quotations and citation omitted).

"As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Grider*,

19

618 F.3d at 1256; *see Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). It follows that the existence of probable cause defeats a § 1983 malicious prosecution claim. *Grider*, 618 F.3d at 1256. An officer has probable cause to make an arrest when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) (internal quotation marks and citation omitted). It is immaterial to determining whether probable cause to arrest existed that an individual is ultimately not prosecuted or is later acquitted. *See Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002); *L.S.T., Inc. v. Crow,* 49 F.3d 679, 685 (11th Cir. 1995).

The plaintiff cannot prevail on his claims of malicious prosecution because he fails to provide sufficient facts to create a plausible claim of malice on the part of defendants Black, Allen, and Hammick or show that they lacked probable cause to charge him. As for his arrest in September 2015 for failing to register in July, plaintiff admits he did not register because he though he "was good" after having already registered three times in 2015. Thus, there plainly was probable cause for that arrest. Moreover, the fact that the plaintiff was ultimately found not guilty of

the first ASORCNA violation is immaterial to whether probable cause existed to arrest him for failing to register in July 2015.

Although the plaintiff alleges Allen and Hammick "manipulated the law" in order to revoke his bond and hold him in jail in October for failing to register immediately upon his release from jail in September, (doc. 33 at 9, 10), he fails to provide any specific factual support for his assertions.   Indeed, the plaintiff admits he failed to register in July 2015 because he had previously registered in late June 2015.  (Doc. 33 at 10).  Moreover, ASORCNA requires a sex offender to register immediately upon release from incarceration.  Ala. Code § 15-20A-10(a)(1).  The statute does not contain any 24-hour minimum incarceration before the duty to register is triggered. The plaintiff does not allege that he immediately complied with this requirement when he was released from jail in September 2015.  Indeed, the implication from his pleading is that he did not because he was in jail for only fifteen hours.  Because it appears that he did not register "immediately" upon his release from jail in September 2015, there is at least arguable probable cause for his arrest on that charge.

The plaintiff has alleged only the ultimate conclusion that he was wrongfully charged with violating ASORCNA without submitting specific factual assertions to support such a conclusion.  The plaintiff's allegations are simply too conclusory for the court to draw a reasonable inference that defendants Black, Allen, and

Hammick unlawfully seized him in connection with his arrests in September and October 2015.  Therefore, the plaintiff's § 1983 claims for malicious prosecution against defendant Black, Allen, and Hammick are due to be dismissed for failing to state a claim upon which relief may be granted.

### 3. 72-Hour Hearings

On February 9, 2014, the plaintiff was arrested for unlawful possession of a controlled substance and two other charges.  (Doc. 33 at 16).  The plaintiff stayed in the Cullman County Jail for four months without a court hearing, including not receiving a 72-hour hearing.  (*Id*.).  The plaintiff claims he has been in jail "4 other times on this same [unlawful possession] charge" and did not receive a 72-hour hearing on any of these occasions.  (*Id*.).  The plaintiff further alleges he was denied a 72-hour hearing after he was arrested in September 2015 on the ASORCNA charge.  (Doc. 33 at 16).  The plaintiff acknowledges that he received a 72-hour hearing after his arrest on October 5, 2015, but claims it was an "improper hearing" because it was conducted over Deputy Ross's cell phone. (*Id*.).  He states there is a "video court room" in the Cullman County Jail that is not in use.  (*Id*.).

The plaintiff fails to associate any of the named defendants with his claims that the state court denied him a 72-hour hearing.  Vague, general, or conclusory allegations are insufficient to merit relief under 42 U.S.C. § 1983.  *See Fullman v.*

*Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Even under the so-called notice rules of pleading, the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief against some identifiable defendant.  "It is not enough to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery."  *Id*. at 556 (internal citations omitted).  Because the plaintiff fails to state factual allegations against any of the individual defendants regarding the state court's failure to provide him with a 72-hour hearing, these claims are due to be dismissed.[13]

The plaintiff acknowledges that he received a 72-hour hearing after his arrest on October 5, 2015, but claims it was an "improper hearing" because it was conducted over Deputy Ross's cell phone.  (Doc. 33 at 16).  He states there is a "video court room" in the Cullman County Jail that is not in use.  (*Id*.).  The mere

_____

[13]   On May 12, 2016, the plaintiff filed a motion to amend his complaint to name as defendants Magistrate Joan White, District Judge Kim Chaney, and Circuit Judge Martha Williams.  (Doc. 41).  The plaintiff stated that the judges were "[responsible] for the 72 hour hearing and preliminary hearing violations . . . ."  (Doc. 41 at 2).  On May 20, 2016, the undersigned denied the plaintiff's motion to amend because he did not explain why he could not have named these individuals as defendants when he filed his final amended complaint.  (Doc. 42 at 1).  Moreover, the undersigned noted the plaintiff expressly stated in his final amended complaint, "I want to point out that Judge Kim Chainy [sic] IS NOT a party in this action[;] it was his courtroom that I got arrested in and appeared in Oct. 5[,] 2015.  He is not a defendant."  (Doc. 42 at 1; Doc. 33 at 11 (emphasis in original)).  Finally, it is also clear that, even if added as defendants, plaintiff is complaining about something these defendants did or failed to do in their judicial capacities, for which they are entitled to absolute judicial immunity from damages.

fact that the plaintiff's 72-hour hearing was conducted over a cell phone does not, by itself, state a constitutional claim. Indeed, the plaintiff does not allege that he was deprived of any constitutional right during the hearing itself. Moveover, whether to conduct the hearing over a cellphone (or in any other manner) was the decision of the magistrate, who is entitled to absolute judicial immunity from damages. Therefore, the plaintiff's claim that his hearing was conducted over Deputy Ross's cell phone is due to be dismissed for failing to state a claim upon which relief may be granted.

## B. Defendants Blaylock, Roberts, and Bryant

On November 8, 2007, the plaintiff's probation was revoked and he was sentenced to two years in prison after he violated ACNA by residing with a minor. (Doc. 33 at 12). The plaintiff states that the Cullman County District Attorney's Office offered him a 25 year prison sentence on his ACNA violation. (*Id*.). The plaintiff decided to proceed to trial. (*Id*.). The plaintiff's attorney argued that Assistant District Attorney John Bryant would not be able to "prove conduct" or enhance the plaintiff's sentence based on a former plea. (*Id*.). As a result, Bryant offered the plaintiff a ten year sentence with good time. (*Id*.). The plaintiff states, "Briant [sic] threatened that if I took it to jury trial and lost he would in fact give me the 25 years." (*Id*.). The plaintiff accepted the state's offer of ten years. (Doc. 33 at 12).

The plaintiff further claims District Attorney Blaylock and Assistant District Attorneys Bryant and Roberts informed his girlfriend that if she remained with the plaintiff, and if they married, she would not "get her kids back." (Doc. 33 at 14). Additionally, after the plaintiff was arrested in September 2015, he claims Assistant District Attorney Roberts "had [him] pushed through District Court and [indicted] by a grand jury" before he could have a preliminary hearing. (Doc. 33 at 16-17).

The plaintiff's claims concerning his criminal proceedings which occurred between 2007 and 2008 are barred by the statute of limitations. The United States Supreme Court has held that the proper statute of limitations for a 42 U.S.C. § 1983 action is the forum state's general or residual statute of limitations for personal injury. *See Owens v. Okure*, 488 U.S. 235, 236, 249-50 (1989). The residual statute of limitations for personal injury in Alabama is two years.[14] Ala. Code § 6-2-38(l) (1975). A limitations period begins to run when a cause of action accrues. *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996). The Eleventh Circuit has stated that a cause of action ordinarily "'will not accrue, and thereby set the limitations clock running, until the plaintiff[ ] know[s] or should know (1) that [he] ha[s] suffered the injury that forms the basis of [his] complaint and (2) who

_____

[14]    Alabama Code § 6-2-38(1) (1975) provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

has inflicted the injury.'" *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citing *Mullinax v. McElhenny*, 817 F.2d 711, 716 (11th Cir. 1987)).  Generally, once a limitations period has run, the action is barred, regardless of the merits of the plaintiff's claims.  *See Arce v. Garcia*, 434 F.3d 1254, 1260-61 (11th Cir. 2006).

The plaintiff's claims that Blaylock, Roberts, and Bryant allegedly violated his constitutional rights with respect to the ACNA prosecution arose between 2007 and 2008.  By this time, the plaintiff was aware that he had been allegedly injured.  However, the plaintiff did not file the present § 1983 action until November 20, 2015.[15]   (Doc. 1 at 8.)    Accordingly, the plaintiff's claims against Blaylock, Roberts, and Bryant based on events which occurred between 2007 and 2008 are barred by the statute of limitations, and are due to be dismissed.[16]

The plaintiff's claims that after his arrest in September 2015, Assistant District Attorney Roberts "pushed" his case through District Court and he was

---

[15]     Because a prisoner proceeding *pro se* has virtually no control over the mailing of his pleading, it is deemed to be filed at the time the prisoner delivers the pleading to prison or jail officials to be mailed.  *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988).  Although the record contains no information regarding the date the plaintiff gave his original complaint to prison officials to mail, he signed his complaint on November 20, 2015.  (Doc. 1 at 8.)  The court will therefore deem the plaintiff's original complaint to have been filed on November 20, 2015.

[16]     The court observes additionally that these prosecutors would be entitled to absolute prosecutorial immunity from damages for the actions and decisions they took in their capacities as prosecutors in a criminal case.  *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Further, any claim that necessarily challenges the validity of a criminal conviction cannot be asserted unless and until the criminal conviction has been vacated, reversed, or otherwise set aside.  *See Heck v. Humphrey*, supra.  Plaintiff has not alleged that his ACNA conviction has been set aside, vacated, or reversed.

indicted by a grand jury before he could have a preliminary hearing. (Doc. 33 at 16-17). The United States Supreme Court has held that state prosecutors have absolute immunity for their prosecutorial actions in cases seeking monetary damages. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Although subsequent cases have held that such absolute immunity may not extend to those aspects of a prosecutor's responsibilities that cast him in the role of an administrator or investigative officer, it is clear that a prosecutor is immune from a civil suit for damages when he is performing the normal range of prosecutorial actions in connection with a criminal case. *Id*. at 430-31 (holding that the prosecutorial function includes the initiation and pursuit of a criminal prosecution and all appearances before the court, including examining witnesses and presenting evidence); *see also, Burns v. Reed*, 500 U.S. 478, 492 (1991).

The plaintiff has not set forth any facts that would demonstrate defendant Roberts acted in any manner other than as a prosecutor. Thus, the plaintiff's claims against Roberts based on events which occurred in 2015 are due to be dismissed for failing to state a claim upon which relief may be granted.

## C. Constitutionality of ASORCNA

The plaintiff alleges that certain portions of the ASORCNA violate his constitutional rights. Specifically, the plaintiff challenges (1) the requirement that he register four times a year; (2) the registration fee of $10.00 each time he

registers; (3) his inability to apply for a commercial driver's license and find employment driving 18-wheelers out of state; and (4) the requirement prohibiting him from living with a minor, including his daughter. The plaintiff alleges these provisions are "overbearing" and interfere with his life and liberty. (Doc. 33 at 6).[17]

### 1. Ex Post Facto

The plaintiff alleges ASORCNA "is unconstitutional because it mirrors a life time [sic] sentence of probation because there is no end . . . ." (Doc. 33 at 6). Liberally construing the plaintiff's amended complaint, he claims ASORCNA's requirements and prohibitions as applied to him constitute an additional punishment and, therefore, violate the Ex Post Facto Clause.

The Ex Post Facto Clause forbids Congress and states from enacting "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal quotation marks and citation omitted). The United States Supreme Court has held that the ex post facto bar

---

[17]   The court notes in passing that the plaintiff has standing to raise challenges to ASORCNA even though he is currently serving a 54-month sentence unrelated to the statute. While he *currently* is not subject to the residency, employment, and travel restrictions in the law, he will be subject to them immediately upon his release from his current sentence. Although the impact of the law may not be imminent, it is concrete and certain enough to provide the plaintiff with sufficient standing to challenge it. The impact of the law is not speculative or hypothetical for plaintiff. Indeed, its application to him in the past has prevented him from living in certain locations and with his minor daughter.

applies only to criminal laws, not to civil regulatory regimes. *See Kansas v. Hendricks*, 521 U.S. 346, 369 (1997) (holding that a state's civil commitment statute was non-punitive, not a criminal proceeding, and thus did not implicate the Ex Post Facto Clause). Whether certain elements of ASORCNA impose "punishment," beyond being regulatory in nature, is an essential element in considering an ex post facto challenge to the statute.[18]

The opinion issued by the United States Supreme Court in *Smith v. Doe* is dispositive of the plaintiff's ex post facto claim. *See Smith v. Doe*, 538 U.S. 84 (2003). In *Smith*, the Court addressed an ex post facto challenge to the Alaska Sex Offender Registration Act, which is similar to the ASORCNA in its registration and notification requirements. The *Smith* Court set out a two-step analysis to determine whether an act constitutes retroactive punishment or a civil regulatory scheme. *Id*. at 92. The first step is to determine whether the intent of the legislature was to impose punishment or enact a non-punitive civil regulatory scheme. *Id*. If the intent was to enact a regulatory scheme, then step two is to determine whether the act is *so punitive* in effect as to negate the intention to be regulatory. *Id*. Under this second step, the Court stated "[o]nly the clearest proof will suffice to override legislative intent and transform what has been denominated

---

[18]    There is no question that the restrictions contained in ASORCNA did not exist at the time of plaintiff's sex-offender conviction in Georgia in 2003, although the registration requirements of the now-repealed ACNA did exist.

a civil remedy into a criminal penalty." *Id*. (internal quotations and citation omitted).

Applying this same analysis to ASORCNA, it is necessary to first decide whether the intent of the Alabama Legislature was to impose punishment on sex offenders. If the answer is "yes," the analysis ends because retroactive application of the statute would constitute an ex post facto violation. *Id*. at 92. The Alabama Legislature[19] specifically stated that "its intent in imposing additional tracking and

---

[19]    The legislative findings support ASORCNA are found at Ala. Code § 15-20A-2, paragraphs (2), (3), and (4) of which do not seem to apply to the plaintiff, as he is not a juvenile sex offender, a homeless sex offender, or a sexually violent offender. The remaining paragraphs (1) and (5) state the following:

The Legislature makes all of the following findings:

(1) Registration and notification laws are a vital concern as the number of sex offenders continues to rise. The increasing numbers coupled with the danger of recidivism place society at risk. Registration and notification laws strive to reduce these dangers by increasing public safety and mandating the release of certain information to the public. This release of information creates better awareness and informs the public of the presence of sex offenders in the community, thereby enabling the public to take action to protect themselves. Registration and notification laws aid in public awareness and not only protect the community but serve to deter sex offenders from future crimes through frequent in-person registration. Frequent in-person registration maintains constant contact between sex offenders and law enforcement, providing law enforcement with priceless tools to aid them in their investigations including obtaining information for identifying, monitoring, and tracking sex offenders.

* * *

(5) Sex offenders, due to the nature of their offenses, have a reduced expectation of privacy. In balancing the sex offender's rights, and the interest of public safety, the Legislature finds that releasing certain information to the public furthers the primary governmental interest of protecting vulnerable populations, particularly children. Employment and residence restrictions, together with monitoring and tracking, also further that interest. The Legislature declares that

monitoring requirements on sexually violent predators is to assist law enforcement in carrying out their duties and, most importantly, to protect the public, especially children." Ala. Code. § 15-20A-2(4). The Legislature further stated that "its intent in imposing certain registration, notification, monitoring, and tracking requirements on sex offenders is not to punish sex offenders but to protect the public and, most importantly, promote child safety." Ala. Code § 15-20A-2(5). Therefore, it does not appear the Legislature intended to impose punishment on sex offenders.

However, the Legislature's intent does not end the review. The next step requires an examination of ASORCNA to see if it is "so punitive in either purpose or effect as to negate [the State's] intention to deem it 'civil.'" *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (quoting *United States v. Ward*, 448 U.S. 242, 248-49 (1980)). The Supreme Court in *Smith* held that in analyzing the effect of sex-offender registration statutes, it is helpful for reviewing courts to refer to the seven factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). Those factors include whether the sanction: (1) involves an affirmative disability or restraint; (2) has historically been regarded as a punishment; (3) comes into play only on a finding of scienter; (4) will promote the traditional

---

its intent in imposing certain registration, notification, monitoring, and tracking requirements on sex offenders is not to punish sex offenders but to protect the public and, most importantly, promote child safety.

Ala. Code § 15-20A-2

aims of punishment -- retribution, and deterrence; (5) applies to behavior which is already a crime; (6) has an alternative purpose to which the sanction may rationally be connected is assignable to it; and (7) appears excessive in relation to the alternative purpose assigned. *Id*. The factors the *Smith* Court found most relevant to a review of the sex offender statute were whether, "in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a non-punitive purpose; or is excessive with respect to this purpose." *Smith*, 538 U.S. at 97.

In reviewing ASORCNA in light of these "guideposts," *see United States v. W.B.H.*, 664 F.3d 848, 855 (11th Cir. 2011) (quoting *Smith v. Doe*, 538 U.S. at 97 (2003)), there is no provision for a traditional form of punishment, except for a new criminal prosecution for violation of the duties and obligations imposed by the statute. There is no "public shaming," or incarceration required for compliance with the statute.

The second guidepost—whether the statute imposes affirmative disabilities and restrains—raises concerns as ASORCNA imposes a number of affirmative disabilities and restraints on sex offenders. ASORCNA goes beyond requiring sex offenders to present themselves for registration with a law enforcement agency. For example, the statute affirmatively prohibits sex offenders from establishing a

residence within 2,000 of "any school, childcare facility, or resident camp facility," Ala. Code § 15-20A-11(a), or "with a minor," even if that minor is the offender's own child if the offender was convicted of "any sex offense involving a child." Ala. Code § 15-20A-11(d)(4).[20]  Also, Ala. Code § 15-20A-13 prohibits an adult sex offender from being employed or volunteering at any school, child care facility, or other business that caters primarily to children, or within 2,000 feet of any school or childcare facility.  Further, if the sex offender has been convicted of a sex offense involving a child, he may not work or volunteer within 500 feet of "a playground, park, athletic field, or facility, or any other business" that caters primarily to children.  Adult sex offenders also are under travel restraints. Although Ala. Code § 15-20A-15 is not entirely clear, it appears to require sex offenders to seek a "travel permit" anytime they plan to travel from their county of residence for three or more consecutive days.  In doing so, the sex offender must provide his dates of travel and lodging arrangements, and if he declines to sign the "travel permit form, the travel permit shall be denied."[21]  Finally, sex offenders not

---

[20]     Ala. Code § 15-20A-11(d)(4) prohibits the sex offender establishing a residence with his own child if he was convicted of "any sex offense involving a child, regardless of whether the adult sex offender was related to or shared a residence with the child victim."  This language makes plain that the residency prohibition is broader than simply protecting the offender's own child when it was his child who was the victim of the sex offense.  This provision prohibits an adult sex offender from residing with his own children even when none of his children was the victim of his sex offense.

[21]     The statute is unclear about what is meant by "the travel permit shall be denied."  This seems to be an affirmative disability or restraint in the sense that the sex offender may not lawfully travel unless he first obtains the permit.  This goes beyond simple *notification* that he

only must register with local law enforcement agencies, they are *required* to have and carry identification at all time.   Ala. Code § 15-20A-18.   Because other citizens of the State are not *required* to obtain and carry identification at all times, this operates as an affirmative restraint or disability for sex offenders.

Some of these restraints and disabilities have been the subject of other litigation.   The Middle District of Alabama has concluded that the residency, employment, and travel limitations imposed by ASORCNA constitute "affirmative disabilities and restraints" under the Supreme Court's second *Smith v. Doe* guidepost.   Judge Watkins wrote following a bench trial:

> Mr. McGuire contends that ASORCNA's residency, employment, and travel restrictions, as well as its in-person registration requirements, go beyond the provisions analyzed in *Smith* and *W.B.H.* and impose affirmative disabilities or restraints on registrants.   In large part, the court agrees and finds that ASORCNA's residency, employment, and travel restrictions, as well as its in-person registration requirements, rise beyond the minor and indirect impositions examined in Smith and W.B.H.   Accordingly, the second guidepost, unlike the first, weighs in favor of the conclusion that certain ASORCNA provisions are " 'so punitive either in purpose or effect' [as] to override [Alabama's] intent that it be a civil regulatory statute."   *Id*. at 858 (quoting *Smith*, 538 U.S. at 92, 123 S. Ct. 1140).

*McGuire v. Strange*, 83 F. Supp. 3d 1231, 1257–58 (M.D. Ala. 2015), notice of appeal filed March 6, 2015.   Nevertheless, the court went on to analyze the

---

will be traveling by requiring that permission to travel be obtained.  Failure to obtain permission is a Class C felony.

remaining guideposts and concluded that, for most of these restraints, ASORCNA was not an unconstitutional ex post facto punishment because the restraints were at least rationally related to the statute non-punitive purposes of tracking and monitoring sex offenders prone to recidivism.  Ultimately, the court concluded:

> ASORCNA is unconstitutional under the Ex Post Facto Clause of the United States Constitution to the extent that it requires (1) in-town homeless registrants to register (or check-in) on a weekly basis with two separate law-enforcement jurisdictions as provided by § 15–20A–12(b) in conjunction with § 15–20A–4(13) and (2) all in-town registrants to complete travel permit applications with two separate law-enforcement jurisdictions as provided by § 15–20A–15 in conjunction with § 15–20A–4(13).

*McGuire v. Strange*, 83 F. Supp. 3d 1231, 1271 (M.D. Ala. 2015), notice of appeal filed March 6, 2015.  Judge Watkins otherwise found the remaining employment, residency, and travel restrictions to be rationally related to the statute's non-punitive purpose of public safety.

ASORCNA has a rational connection to the legitimate, non-punitive purpose of public safety, which is advanced by enabling law enforcement officials to maintain closer contact with sex offenders and alerting the public to the risk posed by a sex offender in their community.  At least facially, the regulatory scheme is not excessive with respect to ASORCNA's purpose.  The *Smith* Court noted that the question here is not whether the legislature made the best choice possible to

address the problem it seeks to remedy, but whether the regulatory means chosen are reasonable in light of the non-punitive objective.  *Id*. at 104.

The plaintiff complains generally that he must register quarterly.[22]   In *U.S. v. W.B.H.*, 664 F.3d 848 (2011), the Eleventh Circuit Court of Appeals analyzed the federal sex offender statutory regime that requires in-person registration on the same quarterly basis as ASORCNA.  The Eleventh Circuit concluded that the in-person registration requirements help law enforcement track sex offenders and ensure that the information provided is accurate.  *Id*. at 857 (citing *United States v. Powers*, 562 F.3d 1342, 1344 (11th Cir. 2009) ("[T]he requirement that sex offenders register under § 16913 is necessary to track those offenders who move from jurisdiction to jurisdiction." (quotation marks omitted))).  The Court held that the quarterly, in-person registration may be inconvenient, but requiring it is not punitive. *Id*.

The plaintiff further complains that he must pay a $10.00 fee each time he registers.[23]   The Eleventh Circuit has not reached whether ASORCNA's

---

[22]    Under ASORCNA, a sex offender "shall appear in person to verify all required registration information during the adult sex offender's birth month and every three months thereafter, regardless of the month of conviction, for the duration of the adult sex offender's life with local law enforcement in each county in which the adult sex offender resides."  Ala. Code § 15-20A-10(f).

[23]    ASORCNA states in relevant part:

(a) An adult sex offender shall pay a registration fee in the amount of ten dollars ($10) to each registering agency where the adult sex offender resides

registration fee requirement is instead a punitive fine which violates the Ex Post Facto Clause.   However, the Seventh Circuit, in analyzing Wisconsin's $100 annual registration fee imposed on convicted sex offenders, determined that the plaintiffs failed to prove the fee was actually a fine.  *Mueller v. Raemisch*, 740 F.3d 1128, 1133-35 (7th Cir. 2014).  The Court noted that the $100 fee was the same as that of Illinois, but higher than the fees charged by Idaho ($80) and Massachusetts ($75).  *Id*. at 1134.   The Court stated:

> The fee is intended to compensate the state for the expense of maintaining the sex offender registry.  The offenders are responsible for the expense, so there is nothing "punitive" about making them pay for it, any more than it is "punitive" to charge a fee for a passport.  If there were no passports, there would be no passport office, and no expenses of operating such an office.  The state provides a service to the law-abiding public by maintaining a sex offender registry, but there would be no service and hence no expense were there no sex offenders.  As they are responsible for the expense, there it nothing punitive about requiring them to defray it.

*Id*. at 1135.

---

beginning with the first quarterly registration on or after July 1, 2011, and at each quarterly registration thereafter.

(b) Each time an adult sex offender terminates his or her residence and establishes a new residence, he or she shall pay a registration fee in the amount of ten dollars ($10) to each registering agency where the adult sex offender establishes a new residence.

Ala. Code § 15-20A-22(a)-(b).

The Seventh Circuit's reasoning is persuasive.  Alabama assesses a $10 fee per quarterly registration, thereby establishing a baseline fee of $40 per year. Ala. Code § 15-20A-22(a).  If the registrant is incarcerated at intervals during the year, as in the plaintiff's case, and must also register upon his release, then the registrant may have to pay additional registration fees.[24]   Also, if he is required to register in multiple counties due to his employment and schooling, the total fee a registrant might face could rise precipitously.  This plaintiff, however, has alleged no facts suggesting that he himself faces such multiple registration fees or that the fees are so high that they must be fines.  Moreover, the Legislature expressly noted that the money collected from registration fees "shall be appropriated to the registering agency to defray the costs associated with sex offender registration, verification, and notification."   Ala. Code  §  15-20A-22(d)(1).   Because ASORCNA's fees are used to offset the costs of the regulatory scheme, they do not resemble the traditional punishment of fines.

Based on the foregoing, the quarterly registration and fee requirements under ASORCNA  are  non-punitive  and  do  not  violate  the  Ex  Post  Facto  Clause.

---

[24]    Immediately upon release from incarceration, or immediately upon conviction if the adult sex offender is not incarcerated, an adult sex offender shall appear in person and register all required registration information with local law enforcement in each county in which the adult sex offender resides or intends to reside, accepts or intends to accept employment, and begins or intends to begin school attendance.  Ala. Code § 15-20A-10(a)(1); *see also* Ala. Code § 15-20A-22(b) ("Each time an adult sex offender terminates his or her residence and establishes a new residence, he or she shall pay a registration fee in the amount of ten dollars ($10) to each registering agency where the adult sex offender establishes a new residence.").

Notwithstanding Judge Watkins's opinion in *McGuire* that the residency, employment, and travel restraints in ASORCNA are rationally related to the statute's non-punitive purposes, that finding is not binding authority for this court. Because it is merely persuasive, the court cannot say that the plaintiff's challenges to ASORCNA on the basis of these restraints is clearly frivolous or fails to state a claim at this stage of the case.

2. *Fourteenth Amendment Due Process Claims*

The plaintiff alleges also that ASORCNA violates his Fourteenth Amendment right to pursue employment. The plaintiff does not complain about ASORCNA's employment provisions which prohibit sex offenders from applying for, accepting, or maintaining employment or voluntary positions within areas where children are likely to be present.[25] Rather, the plaintiff claims he cannot apply for a commercial driver's license and secure employment driving 18-wheelers because ASORCNA requires that he "be home every night" and not leave the State of Alabama.[26]  (Doc. 33 at 14-15).

---

[25]   As part of ASORCNA's employment restrictions, "[n]o adult sex offender shall apply for, accept, or maintain employment or vocation or volunteer at any school, childcare facility, mobile vending business that provides services primarily to children, or any other business or organization that provides services primarily to children." Ala. Code § 15-20A-13(a).

[26]   ASORCNA makes no such restrictions.  The plaintiff may travel, but must comply with ASORCNA's requirements for reporting his travel information to the proper agencies. Ala. Code § 15-20A-15.

The plaintiff further complains that ASORCNA prohibits him from living with his daughter.  Under ASORCNA, an adult sex offender is prohibited from maintaining a residence or any other living accommodation with a minor.[27]

_____

[27] Ala. Code § 15-20A-11. Adult sex offender – Prohibited residence locations, etc.

(a) No adult sex offender shall establish a residence, maintain a residence after release or conviction, or establish any other living accommodation within 2,000 feet of the property on which any school, childcare facility, or resident camp facility is located unless otherwise exempted pursuant to Sections 15-20A-23 and 15-20A-24. For the purposes of this section, a resident camp facility includes any place, area, parcel, or tract of land which contains permanent or semi-permanent facilities for sleeping owned by a business, church, or nonprofit organization used primarily for educational, recreational, or religious purposes for minors and the location of the resident camp has been provided to local law enforcement. Resident camp does not include a private residence, farm, or hunting or fishing camp.

(b) No adult sex offender shall establish a residence, maintain a residence after release or conviction, or establish any other living accommodation within 2,000 feet of the property on which his or her former victim, or an immediate family member of the victim, resides unless otherwise exempted pursuant to Section 15-20A-24 or Section 15-20A-16.

(c) Changes to property within 2,000 feet of a registered address of an adult sex offender which occur after the adult sex offender establishes residency shall not form the basis for finding that the adult sex offender is in violation of this section unless the sex offender has been released or convicted of a new offense after establishing residency.

(d) No adult sex offender shall establish or maintain a residence or any other living accommodation with a minor. For the purpose of this subsection, living accommodation includes, but is not limited to, any overnight visit with a minor. Notwithstanding the foregoing, an adult sex offender may reside with a minor if the adult sex offender is the parent, grandparent, stepparent, sibling, or stepsibling of the minor, unless one of the following conditions applies:

(1) Parental rights of the adult sex offender have been or are in the process of being terminated as provided by law.

(2) The adult sex offender has been convicted of any sex offense in which any of the minor children, grandchildren, stepchildren, siblings, or stepsiblings of the adult sex offender was the victim.

Ala. Code § 15-20A-11(d).   However, ASORCNA provides that an adult sex offender may reside with a minor if the adult sex offender is the parent, grandparent, stepparent, sibling, or stepsibling of the minor, unless the sex offender

---

  (3) The adult sex offender has been convicted of any sex offense in which a minor was the victim and the minor resided or lived with the adult sex offender at the time of the offense.

  (4) The adult sex offender has been convicted of any sex offense involving a child, regardless of whether the adult sex offender was related to or shared a residence with the child victim.

  (5) The adult sex offender has been convicted of any sex offense involving forcible compulsion in which the victim was a minor.

(e) Notwithstanding any other provision of law regarding establishment of residence, an adult sex offender shall be deemed to have established a residence in any of the following circumstances:

  (1) Wherever an adult sex offender resides for three or more consecutive days.
  (2) Wherever an adult sex offender resides following release, regardless of whether the adult sex offender resided at the same location prior to the time of conviction.
  (3) Whenever an adult sex offender spends 10 or more aggregate days at any locations during a calendar month other than his or her registered address.
  (4) Whenever an adult sex offender vacates his or her residence or fails to spend three or more consecutive days at his or her residence without previously notifying local law enforcement or obtaining a travel permit pursuant to Section 15-20A-15.

(f) An adult sex offender is exempt from subsections (a) and (b) during the time an adult sex offender is admitted to a hospital or is incarcerated in a jail, prison, mental health facility, or any other correctional placement facility wherein the adult sex offender is not allowed unsupervised access to the public.

(g) For the purposes of this section, the 2,000-foot measurement shall be taken in a straight line from nearest property line to nearest property line.

(h) Any person who knowingly violates this section shall be guilty of a Class C felony.

Ala. Code § 15-20A-11.

has been convicted of any sex offense involving a child, regardless of whether the adult sex offender was related to or shared a residence with the child victim. Ala. Code § 15-20A-11(d)(4).   According to the Alabama Law Enforcement Agency Community Information Center, the plaintiff was convicted in Georgia on December 18, 2003, for child molestation where the victim was a two year old female.[28]   Therefore, it appears the plaintiff would indeed to be prohibited from maintaining a residence or any other living accommodation with his minor daughter under ASORCNA.

The substantive component of the Due Process Clause "protects fundamental rights that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'"   *Doe v. Moore*, 410 F.3d 1337, 1342-43 (11th Cir. 2005) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994).   "The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain 'liberty' and privacy interests implicit in the due process clause and the penumbra of constitutional rights."   *Id*. at 1343 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).   These special "liberty" interests include "'the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to

---

[28]   *See*   https://app.alea.gov/Community/wfSexOffenderFlyer.aspx?ID=938c7ee3-3010-48f6-8803-e1967d15afd6 .

abortion.'"   *Id.* (quoting *Glucksberg*, 521 U.S. at 720).   Additionally, the

Fourteenth Amendment's liberty component encompasses a fundamental right to

choose one's field of employment.   *Conn v. Gabbert*, 526 U.S. 286, 291–92

(1999).

    In an unpublished opinion, the Eleventh Circuit Court of Appeals expressly

rejected another plaintiff's substantive due process claims concerning ASORCNA.

*See Windwalker v. Governor of Alabama*, 579 Fed. App'x 769, 773-74 (11th Cir.

2014).   In *Windwalker*, the plaintiff alleged that ASORCNA violated several of his

fundamental rights, including "his right to privacy, his right to find and retain

housing, his right to find and keep employment, his right to free travel and

movement, his right to be free from interference in his religious practices, and his

right to be free from threats and harassment."   *Id.* at 773.   The Court pointed to its

decision in *Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005), in which the appellants

asserted the Florida Sex Offender Act infringed on their liberty and privacy

interests, including their rights to family association and to find and/or keep

employment.   *Moore*, 410 F.3d at 1343.   The Court in *Doe* held that "'[t]hough the

Supreme Court has not addressed whether substantive due process invalidates sex

offender registration statutes, we can find no history or tradition that would elevate

the issue here to a fundamental right.'"   *Windwalker*, 579 Fed. App'x at 773

(quoting *Doe*, 410 F.3d at 1345).   In applying *Doe* to the facts in *Windwalker*, the

Eleventh Circuit concluded:

> [W]hen carefully described in the context of a regulation designed to protect the public from sex offender recidivism, none of Windwalker's asserted rights are so deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. This reasoning applies notwithstanding differences between the sex-offender statute at issue in *Doe* and the one at issue here.

*Id*. at 773-74 (quotation marks omitted).

A careful reading of *Windwalker* and *Doe* makes clear, however, that in

neither case did the court of appeals address the claim made by the plaintiff in this

case.  The claim made here is that the ASORCNA expressly and affirmatively

prohibits plaintiff from residing with his own minor daughter, on pain of criminal

penalty, even though there is no evidence that he is a danger to harm her.   In

*Windwalker,* there is no indication that the plaintiff in that case made a similar

claim.  While he did challenge various restrictions in ASORCNA, the ability to

reside with one's own children was not one raised.  Also, although the court of

appeals cited its decision in *Doe v. Moore*, the challenge mounted in that case, as

defined by the court of appeals, was simply against the registration requirement of

the Florida statute.  The court did not address whether an affirmative restraint on

the ability of a sex offender to reside with his children violates the fundamental constitutional right to have and raise children.

Thus, while it appears clear that plaintiff cannot attack ASORCNA on the basis that it violates some fundamental right to a particular employment, the court cannot say that his substantive due process challenge to the provision prohibiting him from residing with his own daughter is so frivolous that it can be dismissed without an answer from the defendants.   Whether there is a compelling state interest sufficient to overcome plaintiff's potential fundamental right to live with and raise his child remains to be seen.

### 3. Not Proper Defendants

Having discussed at length the possibility that plaintiff could plead claims challenging portions of ASORCNA on ex post facto and substantive due process grounds, it is clear, however, that the named defendants in this action are not the proper defendants at this time for these challenges.  First, insofar as plaintiff may be suing for monetary damages on the basis that enforcement of the statute violated his constitutional rights in the past, it is obvious that these defendants are all entitled to some form of absolute or qualified immunity.  The prosecutors are absolutely immune from a claim for damages based on decisions they made to commence criminal prosecutions under the law.  Likewise, Sheriff Gentry and members of his staff are entitled to qualified immunity from damages for enforcing

ASORCNA.  As indicated by the discussion of *Windwalker, Doe v. Moore,* and *McGuire*, there is no clearly established law that would have put these law enforcement officers on notice that enforcement of ASORCNA would violate certain constitutional rights of the plaintiff.  Even if the plaintiff can state a claim, qualified immunity protects the defendants unless the law was so well-established that no reasonable officer could have believed that enforcement of ASORCNA was proper.  Because the law with respect to ASORCNA is far from well-established, these defendants had no fair warning that enforcement of some of the provisions of ASORCNA could run afoul of the federal constitutional rights of the plaintiff.  *See White v. Mclain*, ___ F.3d ___, 2016 WL 1566639, at *3 (11th Cir. Apr. 19, 2016) ("A law is 'clearly established' only when preexisting law gave government officials 'fair warning' that their conduct was unconstitutional."), quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516, 153 L. Ed. 2d 666 (2002).

Additionally, while plaintiff has standing to challenge ASORCNA, these named defendants are not the proper defendants for that challenge.  The plaintiff is currently serving a 54-month sentence, and there is no indication that Sheriff Gentry or any of his staff are attempting or about to attempt to enforce ASORCNA against plaintiff.  There is no indication that, upon his release from prison, he will return to Cullman County or otherwise be required to comply with ASORCNA as administered by these defendants.  Although there may be other defendants against

whom plaintiff might seek relief, whether he will need injunctive or declarative relief as the Sheriff Gentry or any of the defendants named in this action is remote and speculative at this time.

Accordingly, the plaintiff's claims against these named defendants challenging ASORCNA are due to be dismissed.

### D. Conditions of Confinement

The plaintiff raises a litany of complaints concerning the conditions of his confinement at the Cullman County Jail. The plaintiff alleges the jail is overcrowded and he was confined in C111 with two other inmates for 36 days and forced to sleep on the floor for 26 days. (Doc. 33 at 21). There was black mold in the cell. (*Id*.). He was later moved to C113 and confined with three other inmates. (*Id*.). The "cold water button" did not work and the plaintiff had to drink lukewarm water. (*Id*.). Black mold was also present under the bunk. (*Id*.).

The plaintiff states that the top shower in C Block is "nasty." (Doc. 33 at 21). He claims there is standing water that he must wade through to go up and down the steps. (*Id*.). Water runs out of the shower and collects around the telephone on the wall and in front of C111. (*Id*.). The bottom shower does not work. (*Id*.).

On November 23, 2015, the plaintiff was moved to A Block and assigned cell A211, where he has remained.  (Doc. 33 at 21).   He claims there are three people in almost every cell in A Block.  (Doc. 33 at 24).  He alleges officers cannot open his cell with the key.  (*Id*. at 21).  The plaintiff claims he has observed at least seven different officers try and fail to open the cell with the key.  (*Id*.).  Instead, officers must call "Main Control[ ]" to have the door rolled open.  (*Id*. at 22). About three weeks prior to filing the amended complaint, the plaintiff and other inmates were placed in A211 during a tornado warning.  (*Id*. at 21-22).  He claims that if the power to the jail failed and there was an emergency, officers would not be able to rescue him.  (*Id*. at 22).   The plaintiff states other cells, including A224, will not open with the key.  (*Id*.).

The plaintiff claims there are several "electrical junction boxes" in A Block that are missing covers and wires are hanging out.  (Doc. 33 at 22).  He alleges one box by the air and heating units is covered with masking tape.  (*Id*.).  He states there are paper airplanes stuck in the ceiling which pose a fire hazard.  (*Id*.).

The plaintiff alleges the sprinkler head in cell A122 is broken and an inmate worker installed the wrong sprinkler head.  (Doc. 33 at 22).  He states several sprinkler heads are rusted throughout the jail and should be replaced.  (*Id*.).

The plaintiff acknowledges that the food in the jail is "good," but alleges jail officials do not give inmates enough food and they are still hungry.  (Doc. 33 at

23).  The plaintiff also complains that, occasionally, mail is passed out only once a week.  (*Id.*).

The plaintiff claims he has submitted grievances about the foregoing conditions, but Lieutenant Black and Deputy Hammick always have "a smart answer to send back."  (Doc. 33 at 23).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], . . . (2) the defendants['s] 'deliberate indifference' to that condition . . . and (3) causation . . . ."  *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes and internal citation omitted).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether prison officials were deliberately indifferent to that condition is a subjective inquiry.  *See Wilson v. Seiter*, 502 U.S. 294, 298-99 (1991).

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  While prison officials must furnish prisoners

with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates,'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). As the Eleventh Circuit Court of Appeals observed, "The Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." *Harris v. Thigpen*, 941 F.2d 1495, 1511 (11th Cir. 1991) (quotation marks and internal citation omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. at 347. Therefore, extreme deprivations are required to make out a conditions-of-confinement claim under the Eighth Amendment. *See Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004).

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d at 1535. In order to establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm conditions and

of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id.* at 1535 (quoting *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985)).

1. *Showers, Standing Water, Cold Water in Cell*

The plaintiff's allegations concerning dirty showers, standing water, and an inoperable cold water button in his cell do not state claims of constitutional proportion.   Indeed, these circumstances fall far short of the "extreme deprivations" necessary to properly state a claim for relief for unconstitutional conditions of confinement.  *See Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004).  Moreover, the plaintiff has not alleged that he has been injured in any way injured as a result of these conditions.  While they may be unpleasant, they do not rise to an "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 334, 347 (1981).  Therefore, the plaintiff's claims concerning the showers, standing water, and lack of cold water in his cell are due to be dismissed.

2. *Cell Door Lock*

On March 28, 2016, the plaintiff notified the court that the lock on cell A211, where he is housed, was repaired.  (Doc. 36 at 4).  While the plaintiff claims he was locked in this cell during a tornado warning prior to the cell door being repaired, he does not allege that he was injured in any way due to the inoperable

lock.    To the extent the plaintiff alleges other inmates' cell door locks are inoperable, it is a "well-settled principle that a section 1983 claim must be based on the violation of a plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).    Thus, the plaintiff's claim concerning the cell door lock is due to be dismissed.

### 3.  Food Portions

The plaintiff alleges he is not provided sufficient food at the Cullman County Jail and he is constantly hungry.  However, the plaintiff does not allege that he has lost significant weight, is in any way malnourished, or sought medical attention as a result of the portions he receives in jail.  The plaintiff's allegations concerning food portions are insufficient to state a constitutional claim and due to be dismissed.

### 4.  Other Conditions

To the extent the plaintiff complains that the Cullman County Jail is overcrowded; there is black mold in the cells; electric boxes are missing covers and wires are exposed; sprinkler heads are broken and rusted throughout the jail; and paper on the ceilings pose a fire hazard, the plaintiff has stated sufficient facts to warrant a response from Sheriff Gentry, Warden Lee, Lieutenant Black, and

Deputy Hammick.[29]

### E. Access to Courts

The plaintiff complains that the law library costs ten cents a minute to use and if an inmate attempts to put $20.00 on his "books," the kiosk charges $4.45. (Doc. 33).  As a result, an inmate can only get $16.55 worth of time in the law library.  (*Id*.).  Because the plaintiff does not elaborate on this claim, the undersigned assumes the plaintiff alleges that shortening his time in the law library violates his right to access the courts.

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."  *Bill Johnson Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983).  Additionally, the United States Supreme Court has held that the Due Process Clause assures inmates a right of meaningful access to the courts.  *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).  It is now clear, however, that in order to prevail on a claim that his right of access to the courts has been violated, an inmate must establish prejudice, i.e., that "his efforts to pursue a legal claim" were "hindered."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  As the Eleventh Circuit has explained:

---

[29]    The plaintiff has not alleged any claims concerning the conditions of his confinement against Lieutenant Jason Allen or Deputy Ross and these defendants are due to be dismissed with regard to the plaintiff's conditions claims.

> With respect to access-to-court claims, *Lewis* clarifies that a plaintiff
> first must show actual injury before seeking relief under *Bounds*. *See
> Bass v. Singletary*, 143 F.3d 1442, 1444 (11th Cir.1998).   This
> essential standing requirement means that prison officials' actions that
> allegedly violate an inmate's right of access to the courts must have
> impeded the inmate's pursuit of a nonfrivolous, post-conviction claim
> or civil rights action.  *See  id*. at 1445.  To prevail, a plaintiff must
> provide evidence of such deterrence, such as a denial or dismissal of a
> direct appeal, habeas petition, or civil rights case that results from
> actions of prison officials.  *See id*. at 1446.

*Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998).

The plaintiff fails to allege how the imposition of a fee to use the law library hindered his ability to pursue any legal claim.  Because there is no showing that the plaintiff suffered prejudice or actual injury, his access to courts claim is due to be dismissed.

## F. Mail

The plaintiff alleges jail staff fail to distribute mail daily.  (Doc. 33 at 23). Instead, inmate mail is occasionally distributed once a week. (*Id*.).  Interference with legal mail implicates a prison inmate's rights to free speech and to access the courts as guaranteed by the First Amendment.  *See Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008).  However, the plaintiff does not allege that any of the named defendants are personally responsible for delaying the distribution of inmate mail.  Conclusory, vague, and general allegations are insufficient to state a

claim upon which relief under § 1983 can be granted.  *See Fullman v. Graddick*,
739 F.2d 553, 556-57 (11th Cir. 1984).  Moreover, the plaintiff has not alleged that
was injured in any way due to the delay in receiving his mail.  Thus, the plaintiff's
claim concerning the distribution of mail is due to be dismissed.

### G. Jail Trustee & Work Release

The plaintiff claims Gentry, Lee, Black, and Hammick are discriminating
against him by prohibiting him from serving as a jail trustee due to his status as a
sex offender.  However, the plaintiff does not have a constitutionally protected
interest in being classified as jail trustee.  "In the state prison context, convicts
have no due process right to any classification system beyond that mandated by
state law...[and] classification is a matter relegated to the discretion of prison
officials." *Jones v. Diamond*, 594 F.2d 997, 1015-16 (5th Cir. 1979).  Therefore, a
change in the level of custody within a prison system does not infringe upon or
implicate a liberty interest within the meaning of the Due Process Clause.  *See
United States v. Williams*, 787 F.2d 1182, 1184 n.3 (7th Cir. 1986).  Similarly, the
plaintiff has no due process right to trustee status in the county jail.

Neither is the plaintiff entitled to work release because he has no state
created interest in a work release program.  *See Francis v. Fox*, 838 F.2d 1147,
1149-50 (11th Cir. 1988).  Moreover, the Due Process Clause of the Fourteenth

Amendment does not create a constitutionally protected interest in work release. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1421-22 (11th Cir. 1985); *Kitchen v. Upshaw,* 286 F.3d 179, 188 (4th Cir. 2002).

Based on the foregoing, the plaintiff's complaints against defendants Gentry, Lee, Black, and Hammick concerning his classification status and his inability to participate in work release do not implicate the Due Process Clause and the plaintiff has failed to state a cognizable claim under 42 U.S.C. § 1983.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action, except for the Eighth Amendment claim stated below, be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief can be granted. The undersigned **RECOMMENDS** the plaintiff's claim that the conditions in the Cullman County Jail relating to overcrowding, presence of black mold, missing covers on electric boxes, broken and rusted sprinkler heads, and paper on the ceilings which pose a fire hazard violate his Eighth Amendment right against cruel and unusual punishment, all proceed against Defendants Gentry, Lee, Black, and Hammick, and that these claims be **REFERRED** to the undersigned for further proceedings.

## VI. Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

The Clerk is DIRECTED to mail a copy of the foregoing to the plaintiff.

DONE  this 26th day of August, 2016.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE